UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


| | |
|---|---|
| EDWARD ALEXANDER WARREN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 3:14-CV-387-PLR-HBG |
| | ) |
| WARRIOR GOLF CAPITAL, LLC, | ) |
| d/b/a BANEBERRY GOLF AND RESORT, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff, Edward Alexander Warren, filed this action against Defendant, Warrior Golf Capital LLC, d/b/a Baneberry Golf and Resort, alleging that as a patron of Baneberry, he was subjected to racial discrimination and harassment based on his race (African-American). This matter is before the Court on Baneberry's motion to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted. For the reasons which follow, Baneberry's motion will be granted in part and denied in part. The claims for fraud, malicious harassment, false light invasion of privacy, slander, intentional/negligent infliction of emotional distress, and violation of the Tennessee Consumer Protection Act will be dismissed; and Warren will be allowed to

proceed to discovery on his claims for racial discrimination, and negligent hiring/training/supervision.

## I.  Background

Warren is an avid golfer.  He is also African-American.  He has played golf at Baneberry for over eight years. Warren had always felt an "uneasiness" about how Baneberry treated him.  He alleges that because of his race, he was (1) denied the use of Baneberry's services, (2) charged more for its services, (3) had to wait longer than Caucasian patrons to use Baneberry's services, (4) was subjected to racial slurs, and (5) treated to an ad hoc dress code.

Warren states that the discriminatory treatment at Baneberry escalated after Baneberry hired John Stallings as its General Manager.  Warren alleges that Stallings make the following comments to him or about him:  Plaintiff "was a wanna be rapper but was nothing more than a low life nigger;" Plaintiff "ate nothing but chicken and watermelon like all niggers;" "Why do ya'll cater to niggers?  If I owned this place, I would never let them to use my golf course;" and "its' okay boy."  Warren states that these comments made him uneasy because he was usually the only African-American on the premises, and he was not aware of Caucasian patrons being subjected to the same comments and treatment.

Warren reported these racial slurs to Baneberry management, and he believes that an internal investigation was done.  However, Brian Grubbs, with Defendant's corporate office in North Carolina, allegedly commented that since Plaintiff "didn't spend enough

2

money at our establishment, we are not concerned over the racial discrimination." Warren avers that Baneberry had a culture/atmosphere of discriminating against African-Americans, and condoned Stallings' actions and statements. Warren attached to his Amended Complaint affidavits from two former Baneberry employees to support his allegations.

Linda Baxley stated that Stallings made racist and derogatory comments to and about African-Americans, including calling them "niggers." She heard Stallings make racist comments every day she worked with him. She stated that the atmosphere at Baneberry was "very racist" towards African-Americans and had been that way during her entire employment with Baneberry. Warren formally complained to Baxley about Stallings' racial slurs, and she forwarded his complaint up the chain-of-command.

Ryan Veltkamp held the positions of counter-attendant, General Manager, and Director of Golf for Baneberry. He stated that Stallings was continually and consistently racist. Even though Warren was a good customer of Baneberry, Stallings made racist and derogatory comments about African-Americans, including call them "niggers." Not only did Stallings make racial remarks to African-Americans, Veltkamp stated Stallings favorite phrase was "nigger, please," whenever he commented on almost any subject. Veltkamp heard this phrase every day he worked with Stallings.

Tyrone Smith and Tonya Marsh, upon entering Baneberry on May 2nd, were asked by Stallings if they were there to see Warren because their daughter was a "half-breed." Smith and Marsh's daughter is mixed-race. They also heard a comment that Warren was "going to have the golf course full of niggers." Smith attempted to make a

3

complaint to Baneberry management but was ignored. Smith and Marsh decided not to return to Baneberry because of the racist remarks.

As a result of his treatment at Baneberry, Warren alleges he suffered physical/psychological injuries including nausea, vomiting, headaches, severe weight loss, sleeplessness, depression, anxiety, crying spells, nightmares, sorrow, grief, shame, humiliation, embarrassment, anger, disappointment and worry.

Warren's Amended Complaint alleges claims under Tennessee state law for negligence, fraud, violation of the Tennessee Human Rights Act, false light invasion of privacy, slander, intentional/negligent infliction of emotional distress, negligent hiring/training/supervision, and violation of the Tennessee Consumer Protection Act.

Baneberry moves to dismiss all of Warren's claims for failure to state a claim for which relief can be granted. Baneberry asserts that Warren's lawsuit is based on purely verbal conduct of a former Baneberry employee. Baneberry states that even though the alleged statements are abhorrent and manifest bigotry and ill-will, the First Amendment generally precludes liability for verbal harassment unaccompanied by physical conduct. Baneberry contends that while the government can punish "conduct" motivated by hate, the First Amendment does not permit either criminal or civil liability to be imposed in order to punish mere harassing words.

## II. Analysis

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal,*

4

556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly,* 550 U.S. 544, 570 (2007)). A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Instead, a complaint "must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could draw the reasonable inference." *Keys v. Humana,* 684 F.3d 605, 610 (6th Cir. 2012). After the Supreme Court's decisions in *Iqbal* and *Twombly,* the Sixth Circuit has recognized that "courts may no longer accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *New Albany Tractor Inc. v. Louisville Tractor, Inc.,* 650 F.3d 1046, 1050 (6th Cir. 2011).

## A.  First Amendment

Baneberry asserts that Warren's entire complaint is barred by the First Amendment. Warren responds that Stallings' racial slurs did not touch upon a matter of public concern, and thus, do not fall within the First Amendment's protection. The Court agrees.

The Free Speech Clause of the First Amendment can serve as a defense in state tort suits. *See, e.g., Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 50-51 (1988). Whether the First Amendment prohibits holding Baneberry liable for its employee's speech in this case turns on whether that speech is of public or private concern, as determined by all the circumstances of the case. Speech on "matters of public concern" is "at the heart of the First Amendment protection." *Dunn & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 758-59. "Speech concerning public affairs is

5

more than self-expression, it is the essence of self-government." *Garrison v. Louisiana,* 379 U.S. 64, 74-75 (1964). Accordingly, the Supreme Court has held that "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Connick v. Myers,* 461 U.S. 138, 145 (1983).

However, not all speech is of equal First Amendment importance, and where matters of purely private significance are at issue, First Amendment protections are less rigorous. *Hustler,* 485 U.S. at 56. Restricting speech on purely private matters does not implicate the same Constitutional concerns as limiting speech on matters of public interest. "There is no threat to the free and robust debate of public issues; there is no potential interference with a meaningful dialogue of ideas;" and the "threat of liability does not pose the risk of a reaction of self-censorship" on matters of public import. *Dunn & Bradstreet,* 472 U.S. at 760.

Speech deals with matters of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community," or when it "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps,* 562 U.S. 443, 453 (2011). The "inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern." *Rankin v. McPherson,* 483 U.S. 378, 387 (1987). Deciding whether speech is of public or private concern requires the Court to examine the "content, form and context" of the speech as revealed by the record. *Dunn & Bradstreet,* 472 U.S. at 761. As in other First Amendment cases, the Court is obligated to "make an independent examination of the whole record in order to make sure

6

that the judgment does not constitute a forbidden intrusion on the field of free expression. *Snyder,* 562 U.S. at 453. In considering content, form, and context, no factor is dispositive, and it is necessary to evaluate all the circumstances of the speech, including what was said, where it was said, and how it was said. *Snyder,* 562 U.S. at 454.

Here, Stallings' use of racial slurs imparted no socially or politically relevant message. The Court can find nothing in his utterances relating to any matter of political, social or other concern to the community. "Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution." *Cantwell v. Connecticut,* 310 U.S. 296, 309-10 (1940). Far more than an offensive utterance, "the word nigger is pure anathema to African-Americans." *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 185 (4th Cir. 2001). Stallings' use of the word to describe Warren is degrading and humiliating in the extreme. Restricting speech on purely private matters does not implicate the same Constitutional concerns as limiting speech on matters of public interest. Accordingly, the Court finds that the speech at issue is purely private, and is not protected under the First Amendment.

### B. Racial Discrimination

Warren claims that his treatment by Baneberry constitutes racial profiling or discrimination, in violation of Tenn. Code Ann. § 4-21-501, which states:

> Except as otherwise provided in this chapter, it is a discriminatory practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of a place of public accommodation, resort, or amusement, as defined in this chapter, on the grounds of race, creed, color, religion, sex, age or national origin.

7

Under Tennessee law, the plaintiff bears the initial burden of establishing a *prima facie* case of racial discrimination. *Phillips v. Interstate Hotels Corp.,* 974 S.W.2d 680, 684 (Tenn. 1998). To establish a *prima facie* case of racial discrimination vis-à-vis public accommodation, a plaintiff must show: (1) he is a member of a protected class; (2) the defendant operated a place of public accommodation; and (3) he was denied access to the defendant's place of public accommodation. A plaintiff may establish the denial-of-access requirement by showing he was literally denied access, as well as by showing he was subjected to disparate treatment which had the effect of deterring access. *Id.*

In this case, the first and second elements are plainly established: Warren is African-American, and Baneberry is a place of public accommodation. The third element – disparate treatment – is also established. Warren's Amended Complaint states that he was charged more for Baneberry's services because of his race; he had to wait longer than Caucasian patrons to use Baneberry's services; he was mocked, intimidated and ridiculed; and he was subjected to an ad hoc dress code. Warren alleges that Caucasian patrons were not subjected to the same treatment. A reasonable inference can be made that this treatment had the effect of deterring Warren's access to Baneberry's facilities and services. At this stage of the proceedings, Warren's Amended Complaint states a claim for racial discrimination under Tenn. Code Ann. § 4-21-501. Accordingly, Baneberry's motion to dismiss this claim is **DENIED.**

### C. Fraud

An action for fraud requires four elements: (1) an intentional misrepresentation of a material fact; (2) knowledge of the representation's falsity; and (3) an injury caused by reasonable reliance on the representation. The fourth element requires that the misrepresentation involve a past or existing fact or, in the case of promissory fraud, that it involve a promise of future action with no present intent to perform. *Oak Ridge Precision Indus. Inc. v. First Tenn. Bank,* 835 S.W.2d 25, 28 (Tenn.Ct.App. 1992). Nondisclosure will give rise to a claim for fraud when the defendant has a duty to disclose and when the matter not disclosed is material. *Gray v. Boyle Inv. Co.,* 803 S.W.2d 678, 683 (Tenn.Ct.App. 1990).

Warren alleges that Baneberry failed to disclose that it was discriminatory toward African-Americans, and had he known this, he would not have returned to Baneberry. Warren's allegation is nonsensical. His Amended Complaint states that he played golf at Baneberry and utilized its facilities for eight years, but he did not realize it was a "racist enterprise," until he heard Stallings making racial slurs about African-Americans. No false representations of material fact were made to Warren to induce him to continue to use Baneberry's facilities. Nor can Warren show reasonable reliance. He admits he continued to frequent Baneberry after becoming aware of Stallings' discriminatory animus towards African-Americans. The Court finds that the Amended Complaint fails to state any claim for fraud. Accordingly, Baneberry's motion to dismiss the fraud claims is **GRANTED.**

9

### D. Malicious Harassment

Warren alleges malicious harassment under Tenn. Code Ann. § 4-21-701. A claim of malicious harassment requires not only that a person acted maliciously, *i.e.,* ill-will, hatred or spite, but also that a person unlawfully intimidated another from the free exercise or enjoyment of a constitutional right by injuring or threatening to injure, or coercing another person, or by damaging, destroying or defacing any real or personal property of another person. *Washington v. Robertson County,* 29 S.W.3d 466, 473 (Tenn. 2000). The plaintiff must also demonstrate that the perpetrator was motivated by the victim's race, color, religion, ancestry or national origin. *Levy v. Franks,* 159 S.W.3d 66, 80 (Tenn.Ct.App. 2004).

Baneberry asserts Warren fails to allege facts sufficient to constitute a claim for malicious harassment. The Court agrees. Warren alleges that he was subjected to racial slurs by Stallings, but these facts do not rise to the level of malicious harassment described in the statute. Warren does not allege that he experienced any threat or actual injury to himself or to his real or personal property. Therefore, the Court finds that Warren has failed to state a claim for malicious harassment. Accordingly, Baneberry's motion to dismiss this claim is **GRANTED.**

### E. Respondeat Superior

Warren alleges that Baneberry is liable for the actions of Stallings which constitute false light invasion of privacy, slander/defamation, and intentional/negligent infliction of emotional distress.

Under the doctrine of *respondeat superior*, an employer may be liable for acts committed by an employee while acting in the course and scope of his employment. *See Tennessee Farmers Mut. Ins. Co., v. American Mut. Liability Ins. Co.,* 840 S.W.2d 933, 937 (Tenn.Ct.App. 1992). In order to hold the employer liable, the plaintiff must prove (1) that the person who caused the injury was an employee, (2) that the employee was on the employer's business, and (3) that the employee was acting within the scope of his employment when the injury occurred. *Id.*

Warren has alleged, and Baneberry does not dispute, that Stallings was an employee of Baneberry. However, the pivotal issue regarding the facts alleged is whether the Amended Complaint shows that Stallings was acting "within the scope of defendant's business purpose." Generally, an employer may be held liable for acts of an employee that are outside the scope of employment if done at the direction of the employer. *Kinnard v. Rock City Constr. Co.,* 286 S.W.2d 352, 354 (Tenn.Ct.Ap0p. 1955). Conduct of an employee is not within the scope of employment if it is different in kind from that authorized, or too little actuated by a purpose to serve the employer. *See Tennessee Farmers,* 840 S.W.2d at 938.

Warren's Amended Complaint states that Baneberry represented that (1) everyone using its facilities would be treated fairly; (2) it does not allow discrimination; (3) its establishment is open to everyone, regardless of their color or race; (4) it prides itself on treating guests right and making sure every dollar entrusted to it is well spent. Warren has not alleged that Baneberry directed or authorized the use of racial slurs by Stallings. Based upon Warren's allegations, Stallings deviated from Baneberry's policies and

11

normal methods of dealing with patrons. Stallings was not performing any duty entrusted to him by Baneberry at the time he allegedly uttered the racial slurs. The allegations of the Amended Complaint do not show that Stallings' conduct was actuated, even in part, by a purpose to serve Baneberry. It was not similar to what he had been hired to do. Nor does Warren allege that Baneberry had a reason to expect such conduct by Stallings. The Court cannot find that Stallings' actions were incidental to authorized conduct in such a manner as to make them within the scope of his employment. Accordingly, Baneberry's motion to dismiss Warren's claims for false light invasion of privacy, slander/defamation, and intentional/negligent infliction of emotional distress will be **GRANTED.**

### F.  Tennessee Consumer Protection Act

In order to recover under the Tennessee Consumer Protection Act (TCPA), the plaintiff must prove:  (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an "ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated. Tenn. Code Ann. § 47-18-109(a)(1). The TCPA does not impose a single, bright-line standard for determining whether a particular act or practice is deceptive. As a result, the standards to be used in determining whether a representation is "unfair" or "deceptive" under the TCPA are legal matters to be decided by the courts. *Tucker v. Sierra Bldgs.,* 108 S.W.3d 109, 116 (Tenn.Ct.App. 2005). A deceptive act or practice is, in essence, "a material representation, practice or omission likely to mislead . . . reasonable consumers to their detriment." *Ganzevoort v. Russell,* 949 S.W.2d 293, 299 (Tenn. 1997).  A deceptive act or practice is one that

causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact. *Campbell v. Teague,* 2010 WL 1240732 at *7 (Tenn.Ct.App. Mar. 31, 2010).

Warren alleges that Baneberry wrongfully misrepresented its services on its website, and attached a copy of the website to his Amended Complaint. The website states, "At Baneberry Golf & Resort, we blend a familiar, family atmosphere with a passion for golf and hospitality. We pride ourselves on treating guests right and making sure every dollar entrusted to us is well spent."

Construing the allegations of Warren's Amended Complaint liberally, Warren has not shown that these statements are false or deceptive, or that he relied on the statements when he chose to play golf at Baneberry. The statements on Baneberry's website are more akin to sales talk or opinion rather than to a factual statement. Mere expressions of opinion do not give rise to an action for fraud. *See Brown v. Brown,* 863 S.W.2d 2d 432 (Tenn.Ct.App. 1993). Because Warren cannot show that Baneberry engaged in an unfair or deceptive act or practice, his claim for violation of the TCPA fails as a matter of law. Accordingly, Baneberry's motion to dismiss this claim is **GRANTED.**

### J. Negligent Hiring/Training/Supervision

Warren alleges Baneberry was negligent in the hiring, training, and supervision of Stallings. Tennessee courts recognize the negligence of an employer in the selection and retention of employees. A plaintiff may recover in Tennessee for negligent hiring, supervision or retention of an employee if he establishes, in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness for the

13

job. *Doe v. Catholic Bishop for Diocese of Memphis,* 306 S.W.3d 1712, 1717 (Tenn.Ct.App. 2008). In negligent hiring or retention cases, the ultimate question of liability to be determined is "whether it was reasonable for an employer to permit an employee to perform his job in light of information about the employee which the employer should have known." *Gillis v. Sports Authority Inc.,* 123 F.Supp.2d 611, 617 (S.D.Fla. 2000).

Warren's Amended Complaint states that he made multiple complaints of discrimination to Baneberry management. Two former employees of Baneberry confirm Warren's allegations that Stallings made racist and derogatory comments to and about African-Americans, including calling them "niggers." Linda Baxley stated that she heard Stallings make racist comments every day she worked with him, and that the atmosphere at Baneberry was "very racist" towards African-Americans. Baxley received a complaint from Warren about Stallings' racial slurs, and she forwarded his complaint to Baneberry management. Ryan Veltkamp also stated that he heard racial slurs every day he worked with Stallings. Accepting these allegations as true, Warren's Amended Complaint contains enough facts to state a claim to relief that is plausible on its face that Baneberry failed to adequately train and/or supervise Stallings, and to take adequate remedial action after Warren complained about discriminatory treatment. Accordingly, defendant's motion to dismiss this claim is **DENIED.**

### III.  Conclusion

In light of the above discussion, Baneberry's motions to dismiss the Amended Complaint [R. 7, 19] are **GRANTED in part,** and **DENIED in part.**  The claims for fraud, malicious harassment, false light invasion of privacy, slander, intentional/negligent infliction of emotional distress, and violation of the Tennessee Consumer Protection Act will be dismissed; and Warren will be allowed to proceed to discovery on his claims for racial discrimination, and negligent hiring/training/supervision.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**